No. 55,820

STATE OF KANSAS, *Petitioner,* v. CHARLES A. CHARTIER,
*Respondent.*

(676 P.2d 740)

Opinion filed February 8, 1984.

*Roger N. Walter,* disciplinary counsel, argued the cause for the petitioner.
*Charles A. Chartier,* argued the cause and was on the brief pro se.

*Per Curiam:* Two separate complaints were filed pursuant to
Supreme Court Rule 212 (230 Kan. civ), against Charles A.
Chartier, an attorney admitted to practice law in the State of
Kansas. The other case is *State v. Chartier,* No. 55,819, this day
decided. Docket No. W 2704 filed with the Board for Discipline
of Attorneys was a complaint alleging that respondent had failed
to account and properly pay over funds due his client, caused
garnishments to be issued for amounts not due and persistently
refused to communicate with his client.

Respondent was retained by Debra J. Rowell, formerly Debra
J. Painter, in divorce proceedings in the District Court of Geary
County, Kansas, Case No. 80 D 195. Ms. Rowell paid respondent
a retainer fee of $150.00 at the time that he commenced em-
ployment. Ms. Rowell understood that the total attorney fees
would be $550.00, which fees would be collected from her
husband. At such time as attorney fees were collected from her
husband, Ms. Rowell understood that the retainer fee which she
had paid in the amount of $150.00 would be refunded to her. No
statements for services were ever sent by respondent to Ms.
Rowell. The retainer fee advanced by Ms. Rowell has never
been refunded to her.

Chartier filed the petition for divorce for his client. The tem-
porary order filed with the petition required Mr. Painter to pay
child support in the amount of $150.00 per month and temporary
attorney fees for the wife in the sum of $400.00. November 20,
1980, the parties were divorced. Mr. Painter was ordered to pay
child support in the amount of $300.00 per month, and the
temporary order for the payment of attorney fees in the sum of
$400.00 for Chartier was made a permanent and final judgment.
The journal entry and decree of divorce were not filed until

February 25, 1981, due to a disagreement between counsel for the parties.

In December, 1980, Ms. Rowell requested that Chartier assist in collection of the December, 1980, child support payment which had not been paid. No other request for assistance in collecting child support payments or for garnishments was made by Ms. Rowell of Chartier until July, 1981. The request for assistance in July, 1981, was withdrawn by the client prior to the issuance of garnishment by Chartier.

The docket maintained by the Clerk of the District Court of Geary County, Kansas (Clerk) shows that no child support payments were made during the month of December, 1980. During the year 1981, child support payments were made by or on behalf of Mr. Painter. Notwithstanding the records of the Clerk which showed child support payments, Chartier, without authorization from his client, continued to cause garnishments to be issued against the United States of America for wages due Mr. Painter. Those garnishments were issued on affidavits signed by Chartier and filed with the Clerk. Pursuant to those garnishments, funds were paid to Chartier. The two ledger sheets kept by the Clerk's office indicate child support payments by Mr. Painter and garnishments by Mr. Chartier, as follows:

| Date | Amount Received | Payment for |
|------|-----------------|-------------|
| Ledger sheet page 1: | | |
| January 2, 1981 | $300.00 | child support |
| January 30, 1981 | 300.00 | child support |
| February 27, 1981 | 300.00 | child support |
| April 6, 1981 | 300.00 | child support |
| May 1, 1981 | 300.00 | child support |
| May 18, 1981 | 359.52 | garnishment to Chartier |
| June 17, 1981 | 300.00 | child support |
| Ledger sheet page 2: | | |
| July 29, 1981 | 359.52 | garnishment to Chartier |
| August 5, 1981 | 300.00 | child support |
| August 10, 1981 | 300.00 | child support |
| September 8, 1981 | 300.00 | child support . |
| September 17, 1981 | 426.32 | garnishment to Chartier |
| October 7, 1981 | 300.00 | child support |

| November 13, 1981 | 439.00 | garnishment to Chartier |
| November 16, 1981 | 300.00 | child support |
| December 7, 1981 | 300.00 | child support · |
| December 14, 1981 | 446.19 | garnishment to Chartier |

Total child support - $3,600.00
Total garnishment paid to Chartier - $2,030.55

The funds paid to Chartier through the Clerk, as a result of garnishments which he caused to· be issued, exceeded the amounts due from Mr. Painter for child support and attorney fees. Chartier knew, or should have known through the exercise of reasonable diligence in examining the two ledger sheets of the Clerk, that the affidavits which he caused to be filed were inaccurate. As a result of Chartier's garnishment, funds in excess of amounts due for child support and attorney fees were obtained from Mr. Painter by garnishment.

Funds obtained by respondent through garnishment were deposited in respondent's general account where those funds were commingled with other funds belonging to Chartier. Ms. Rowell was not informed by Chartier that he had issued additional garnishments against Mr. Painter. None of the funds procured by Chartier through garnishment were paid to Ms. Rowell, except the sum of $275.84, which was paid her September 29, 1981. Ms. Rowell became aware of the garnishment by Chartier when her ex-husband stopped paying child support payments due to the overpayment of child support caused by Chartier's unauthorized garnishments.

Chartier claims that most of the funds collected were applied to his fees due from Ms. Rowell for work performed during and subsequent to the divorce. Chartier originally obtained a retainer fee in the amount of $150.00 from Ms. Rowell when he undertook to represent her. Ms. Rowell understood that the total fee would be $450.00. Later, Chartier's secretary told Ms. Rowell that the fee was increased to $550.00 because the divorce was a contested matter. In any event, Ms. Rowell was informed by Chartier all attorney fees would be collected from Mr. Painter, including the $150.00 retainer from Ms. Rowell, which would be refunded to her. Chartier claims he informed Ms. Rowell that when the matter became a contested divorce, he would charge her an hourly fee. There is no record of any discussion of an additional fee by Chartier.

No statements for fees and expenses were ever sent to Ms. Rowell by Chartier. No accounting of funds garnished by Chartier was made to Ms. Rowell. While there is a dispute as to the exact amount owed Ms. Rowell, there was no dispute that the client was due the sum of $446.19 obtained by Chartier through garnishment on December 14, 1981. That amount has never been received by Ms. Rowell, and Chartier has no evidence of having paid such amount to her. Ms. Rowell filed suit to recover funds obtained by Chartier through the garnishments.

On July 2, 1981, prior to Ms. Rowell being awarded final custody of the children, the paternal grandparents of the parties' minor children filed a motion for custody. A consent order was entered on that motion October 5, 1981, without the knowledge or consent of Ms. Rowell. Since custody was ultimately granted to Ms. Rowell, no harm was done. Ms. Rowell was not consulted with respect to such order and she was not notified of its entry by Chartier.

Other problems were encountered by Ms. Rowell with Chartier's representation. In April of 1982, Chartier informed Ms. Rowell a hearing had been set for custody of the children. Ms. Rowell appeared in court for the hearing. Chartier did not appear. When Ms. Rowell went to his office, Chartier reported the hearing had been cancelled because the matter was uncontested. Chartier informed Ms. Rowell of several subsequent hearings being set and cancelled for various reasons. The court records indicate a motion for change of custody was not filed until August, 1982. Ultimately, on September 2, 1982, custody of the minor children was granted to Ms. Rowell.

During the time Chartier represented Ms. Rowell, numerous telephone calls were made by Ms. Rowell to Chartier. Most of the telephone calls were not returned by Chartier. To confer with Chartier, Ms. Rowell would normally be required to go to Chartier's office and wait for him to appear.

Formal complaints in both cases were filed February 16, 1983. The hearing on this complaint was held April 29, 1983, and the panel report recommending indefinite suspension was dated May 30, 1983. The respondent filed exceptions to the hearing panel's report.

The panel concluded as follows:

1. Funds belonging to Ms. Rowell paid to respondent by the

clerk of the district court from garnishments which respondent caused to be issued were deposited in his general account. DR 9-102(A) (230 Kan. cxxvii) requires that funds of a client shall be deposited in one or more identifiable bank accounts and that no funds belonging to the lawyer shall be deposited therein. Funds belonging to respondent were deposited therein, also. Respondent's conduct constitutes a violation of DR 9-102(A).

2. Respondent failed to notify Ms. Rowell of the receipt of garnishment proceeds in violation of Canon 9. A lawyer is required by DR 9-102(B)(1) (230 Kan. cxxvii) to promptly notify a client of the receipt of funds.

3. Respondent has failed to render Ms. Rowell an appropriate accounting of funds coming into his possession through garnishments issued by him. DR 9-102(B)(3) (230 Kan. cxxvii) requires that a lawyer maintain complete records of all funds coming into his possession and render appropriate accounts to his client regarding them.

4. Respondent has failed to promptly pay or deliver garnishment proceeds paid to him to Ms. Rowell. DR 9-102(B)(4) (230 Kan. cxxviii) requires a lawyer to promptly pay or deliver to his client, as requested by the client, funds in the possession of the lawyer which the client is entitled to receive. While there is apparently some dispute as to the exact amount owing Ms. Rowell, partially due to respondent's failure to keep proper records, it is undisputed that garnishment proceeds in the amount of $446.19 paid to respondent on December 14, 1981, have not been paid to Ms. Rowell. Such conduct constitutes a clear violation of DR 9-102(B)(4).

5. Notwithstanding persistent efforts on the part of Ms. Rowell to obtain a hearing on a motion for custody of her children, it required from November, 1981, to September, 1982, to obtain such a hearing. During that period of time, there were at least five continuances, respondent refused to respond to telephone calls from Ms. Rowell, and Ms. Rowell was required to go to respondent's office to make contact with him. The panel believes that such conduct constitutes a violation of DR 6-101(A)(3) (230 Kan. cxxii).

6. Affidavits signed by the respondent and filed with the Clerk misrepresented the amounts due from Mr. Painter. A simple examination of ledgers in the office of the Clerk would have

shown that respondent sought to garnish amounts in excess of Mr. Painter's obligations. DR 1-102(A)(4), (5) and (6) (230 Kan. cxi) generally prohibit conduct involving misrepresentation, conduct prejudicial to the administration of justice and any other conduct adversely reflecting on a lawyer's fitness to practice law. Those funds garnished were not in turn paid to respondent's client, Ms. Rowell, so that she was without the benefit of child support payments which the court ordered be paid for her children. Additionally, Mr. Painter suffered the inconvenience and embarrassment of improper garnishment. The panel concludes that such conduct constitutes misconduct as set forth in DR 1-102(A)(4), (5) and (6).

The panel was persuaded by clear and convincing evidence that respondent had violated the provisions of the Code of Professional Responsibility set out above. The panel believed that respondent's pattern of conduct, particularly in failing to account and promptly pay over funds due his client, causing garnishments to be issued for amounts not due and persistently refusing to communicate with his client, required a serious discipline.

Accordingly, it was the unanimous recommendation of the panel that respondent be suspended from the practice of law by the Supreme Court pursuant to Rule 203(a)(2) (230 Kan. xcix).

The disciplinary hearing panel in this case recommended indefinite suspension. Recommendations of the Board of Discipline for Attorneys are advisory only and are not binding on this court. Supreme Court Rule 212(f) (230 Kan. cv). Misconduct by the respondent has been clearly and convincingly established, and it is the opinion of the court that the recommendation of indefinite suspension should be accepted.

IT IS THEREFORE ORDERED AND ADJUDGED that Charles A. Chartier be and he is hereby indefinitely suspended from the practice of law in the State of Kansas. The costs herein are assessed to the respondent.

IT IS FURTHER ORDERED AND ADJUDGED that the respondent shall forthwith comply with Supreme Court Rule 218 (230 Kan. cvii).

This suspension becomes effective when this opinion is filed with the Clerk of the Supreme Court.